IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SONIA D. WOBBE,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

Case No. 6:12-CV-00512-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

Sonia Wobbe ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 401-403, 1381–83(f). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be affirmed and this case dismissed.

*Procedural Background*

Plaintiff filed applications for SSI and DIB on December 17, 2008, alleging disability as of May 29, 2007. (Tr. 153-59.) Both applications were denied initially and upon reconsideration. (Tr. 89, 93.) A hearing was held on November 4, 2010 before Administrative Law Judge ("ALJ") Rudolph Murgo. (Tr. 16-24.) On March 4, 2011, ALJ Murgo issued a decision finding plaintiff not disabled. (*Id.*) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied her request, plaintiff filed a complaint in this District. (Tr. 1-3.)

*Factual Background*

Born on March 15, 1963, plaintiff was 44 years old on the alleged onset date of disability and 47 years old on the date of the hearing. (Tr. 16, 39.) Plaintiff completed high school through tenth grade, completed some community college, and held various jobs including deli worker and telephone salesperson until she was terminated in approximately 2008. (Tr. 23, 41-47.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th

Page 2 - FINDINGS AND RECOMMENDATION

Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

Page 3 - FINDINGS AND RECOMMENDATION

can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### *The ALJ's Findings*

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 18.) At step two, the ALJ found that plaintiff had the following severe impairments: cardiomyopathy, obesity, and asthma. (*Id.*) At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (Tr. 18-19.)

As such, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations: she cannot climb ladders, ropes, or scaffolds; she can only occasionally climb ramps and stairs; and she cannot be exposed to electrical hazards that could affect a pacemaker. (Tr. 19-23.) At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work as a telephone solicitor and, accordingly, that she was not disabled within the meaning of the Act. (Tr. 23-24.)

### *Discussion*

Plaintiff argues that the ALJ erred by: (1) improperly rejecting plaintiff's subjective symptom testimony; (2) finding that she does not meet or equal Listing 4.02; (3) improperly

Page 4 - FINDINGS AND RECOMMENDATION

rejecting the opinion of cardiologist Dr. Jerold Hawn; and (4) improperly rejecting the lay testimony of Leland Vickers. (Pl.'s Opening Br. 1-2.) Because the ALJ's opinion is supported by substantial evidence in the record, his opinion should be affirmed.

I.   Plaintiff's Testimony

Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony. In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified that she was unable to work because of her heart condition, which limited her breathing and rendered her unable to do almost any activity. (Tr. 19-20, 48, 53.) With respect to her hobbies and daily activities, she stated, "I don't do anything right now." (Tr. 52.) The ALJ rejected plaintiff's testimony. (Tr. 19-20.)

First, the ALJ found that Plaintiff made contradictory statements about her limitations. The Ninth Circuit has stated that an ALJ "may consider . . . ordinary techniques of credibility

Page 5 - FINDINGS AND RECOMMENDATION

evaluation," such as "prior inconsistent statements concerning the symptoms." *Smolen*, 80 F.3d at 1284. Inconsistencies within the record can be a clear and convincing reason for discrediting a claimant's testimony. *See Smolen*, 80 F.3d at 1284. The ALJ noted, for example, that plaintiff stated she is asymptomatic at rest, but she also testified that she has difficulty breathing when sitting. (Tr. 51, 371.) Plaintiff also reported in a medical exam that she does not have much shortness of breath unless she really exerts herself, but she later testified that she needs to lie down throughout the day and is frequently breathless. (Tr. 48, 266.) By noting these inconsistencies, the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony regarding her limitations.

Second, the ALJ found plaintiff's subjective symptom testimony to be inconsistent with the medical evidence of record. (Tr. 20-21). Inconsistency with objective medical evidence is a clear and convincing reason for rejecting a claimant's testimony, as long as it is not the ALJ's sole reason for rejecting a claimant's testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Specifically, plaintiff's allegation of the severity of her symptoms conflicted with Dr. Hawn's assessment that her physical capacity was equal to New York Heart Association (NYHA) Classification I or II, indicating "no" or "slight" limitations on physical activity. (Tr. 20-21, 377.)

Plaintiff argues that the ALJ misinterprets the NYHA language, stating that "[s]light as used in NYHA terms is not slight as used in social security terms." Pl. R. Br. 2. She does not, however, provide any compelling reason to believe that the phrase "slight limitation of physical activity" as used in the NYHA Class II listing has any technical or specialized meaning contrary

to the ALJ's ordinary semantic assessment of that phrase.[1] *See id.* The ALJ provided a reasonable interpretation of the medical evidence in the record, which the Court should not disturb. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld).

Plaintiff also argues that the ALJ bases his assessment "primarily" on a finding that "Plaintiff is a Class I NYHA heart disease patient," and that the record does not support that finding. Pl. R. Br. 2. The record contains evidence that plaintiff falls within Class II of the NYHA ratings, and it is clear from the ALJ's opinion that he considered evidence that plaintiff falls within either Class I or Class II. (Tr. 21, 363, 371, 393, 400-02, 453, 457.) The ALJ properly took into consideration the evidence that plaintiff was a Class II NYHA heart disease patient in his analysis. (*Id.*) Thus, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting plaintiff's testimony and should be affirmed. *Parra*, 481 F.3d at 750.

II.  Listing 4.02

Plaintiff also asserts that the ALJ erred at step three in determining that her impairments did not meet Listing 4.02. Pl. Br. 5-12. An ALJ is not required "to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990) (holding an ALJ's four-page "evaluation of the evidence" was an adequate statement of the "foundation on which the ultimate factual conclusions are based"). To be presumptively disabled under Listing 4.02, plaintiff bears the burden of demonstrating

---

[1] Nor is there case law in this district or within the Ninth Circuit interpreting the NYHA language that would suggest anything other than an ordinary language interpretation of "no limitation" and "slight limitation."

Page 7 - FINDINGS AND RECOMMENDATION

chronic heart failure shown by medically documented presence of ejection fraction[2] of thirty percent or less during a period of stability (not during an episode of acute heart failure) resulting in:

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period . . . with evidence of fluid retention . . . from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization . . . ; or
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02.

The ALJ found that plaintiff did not establish persistent symptoms of heart failure sufficient to meet Listing 4.02. (Tr. 18-19.) Although there was evidence that plaintiff satisfied the threshold ejection fraction requirement (Tr. 273), the ALJ's finding was proper because plaintiff's symptoms did not "very seriously limit [her] ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Part § 404, Subpt. P, Appx. 1 4.02B 1. Plaintiff's self-reported activities of daily living include getting dressed, making sandwiches, taking her stepdaughter to school, doing dishes, feeding her cats, preparing simple meals, sweeping, doing laundry, and doing housework. (Tr. 202-05.)[3] Plaintiff's treating cardiologist, Dr. Hawn, repeatedly assessed her as NYHA functional Class I or II patient (Tr. 20-21, 266, 362,

---

[2] Ejection fraction refers to the percentage of blood pumped out of the heart with each contraction. *See* Listing 4.00D 1(i).

[3] As discussed above, to the extent that plaintiff's subjective self-assessments contradict the ALJ's findings with respect to her activities of daily living, the ALJ provided clear and convincing reasons for discounting those statements.

Page 8 - FINDINGS AND RECOMMENDATION

364, 366, 371, 377, 393, 455), and plaintiff testified that this assessment had not been contradicted by any other medical source. (Tr. 49-50.) Moreover, Dr. Hawn's treatment note of February 4, 2010, documents that plaintiff successfully completed an exercise stress test "on which she did well at 70% of predicted, which normally would be felt to put her in a good range." (Tr. 364, 366.) There was thus sufficient evidence in the record for the ALJ to reasonably conclude that plaintiff did not meet Listing 402. Because the Commissioner's interpretation of the evidence is rational, it should be upheld. *Burch*, 400 F.3d at 679.

Plaintiff argues that even if the ALJ correctly found that she does not meet Listing 4.02 based on her heart condition alone, the ALJ failed to consider the combined conditions of plaintiff's asthma, obesity, and chronic heart failure. (Pl. Br. 15-16.) 42 U.S.C. § 423(d)(2)(C) requires that "the combined effect of all of the individual's impairments" be considered, "without regard to whether any such impairment, if considered separately," would be sufficiently severe to meet a Listing. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (where claimant presented evidence that the combination of impairments established medical equivalence, ALJ's finding that "claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings," without more, was insufficient to show that the ALJ actually considered equivalence); *see also* Social Security Ruling 83-19 at 91.

The ALJ noted plaintiff's severe impairments of obesity, asthma, and cardiomyopathy in making his determination, discussed the symptoms of these impairments, and considered whether plaintiff's impairments significantly limited her physical or mental ability to do basic work activities "alone or in combination." (Tr. 19.) Plaintiff cites no evidence that the combination of her impairments equals Listing 4.02, and the ALJ was thus not required to discuss this possibility in detail. *Lewis*, 236 F.3d at 514 (rejecting claimant's theory that his

Page 9 - FINDINGS AND RECOMMENDATION

symptoms of seizure disorder and mental retardation equaled a listing when claimant did not offer a plausible theory or point to any evidence that his symptoms combined to equal a listed impairment). Moreover, plaintiff does not suggest that her combination of impairments meets or equals any other Listing in the regulations. In sum, the ALJ did not err in finding plaintiff did not meet or equal Listing 4.02.

III. Cardiologist Dr. Jerold Hawn

Plaintiff argues, third, that the ALJ improperly rejected the medical opinion of Dr. Hawn. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830. A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830.

Page 10 - FINDINGS AND RECOMMENDATION

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1034 (9th Cir.1995). Credibility determinations also bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

Dr. Hawn began treating plaintiff's heart condition in 2006. (Tr. 281.) On October 27, 2006, Dr. Hawn noted that plaintiff had been fatigued for several months, and on April 11, 2007, he stated that plaintiff continued to suffer from fatigue and was obese. (Tr. 277, 280-81.) Dr. Hawn noted an increase in plaintiff's fatigue on November 21, 2008, and a dramatic reduction in ejection fraction to 20-25 percent with tachycardic rhythm. (Tr. 273.) He opined that plaintiff suffered dilated cardiomyopathy, chronic systolic heart failure, obesity, and asthma. (Tr. 266.) On March 12, 2009, Dr. Hawn wrote that plaintiff is "totally disabled" by her heart condition. (Tr. 269.) On March 4, 2010, Dr. Hawn noted an ejection fraction of 15 percent with global hypokinesis and moderate mitral regurgitation. (Tr. 362, 387.) On August 23, 2010, he opined that plaintiff is a "functional Class II" patient. (Tr. 393.) A letter prepared by plaintiff's lawyer and signed by Dr. Hawn on October 20, 2010, stated that plaintiff was unable to perform "sedentary work for the duration of an 8 hour work day." (Tr. 394.)

The ALJ credited much of Dr. Hawn's opinion, but gave "little weight" to his assertion that plaintiff could not sustain sedentary work on a full-time basis. (Tr. 22, 394.) This assertion was inconsistent with other medical evidence of record, including a number of Dr. Hawn's statements. (Tr. 22, 371, 377, 393.) The ALJ is not required to accept a medical opinion that

Page 11 - FINDINGS AND RECOMMENDATION

conflicts with that provider's own findings; such contradictions are "clear and convincing reasons[s] for not relying on [that] doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

As the ALJ explained, "Dr. Hawn's opinion [that plaintiff cannot perform sedentary work] does not reconcile [with] claimant's NYHA functional classification of I or II." (Tr. 22.) The ALJ credited Dr. Hawn's statement, found numerous times throughout the record, that plaintiff had little or no limitation on physical activity and is comfortable at rest. (Tr. 22, 371, 377.) Dr. Hawn's August 2010 statement that plaintiff had "demonstrated signs of improvement over the last several months," and was disabled only "for any significant physical work" further contradicted the opinion that plaintiff could not perform sedentary work. (Tr. 393.) Faced with these conflicts in the medical evidence, that ALJ adopted Dr. Hawn's opinion that plaintiff could not perform "significant physical work," concluding that she could perform sedentary work with some restrictions. (*Id.*) The ALJ thus properly weighed the medical evidence and provided legally sufficient reasons for rejecting Dr. Hawn's opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 2005) (holding an ALJ meets the obligation to provide sufficient reasons for rejecting a doctor's opinion by setting forth the conflicting medical evidence, interpreting it, and making specific findings). Thus, the ALJ's rejection of Dr. Hawn's opinion was not error.

IV. Lay Testimony of Leland Vickers

Plaintiff also argues that the ALJ improperly rejected the lay testimony of Leland Vickers. The ALJ must consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide "germane reasons" when rejecting lay testimony. *Id.* The ALJ, however, is not required to address each witness "on an

individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Id.*

Mr. Vickers wrote a Third Party Function Report on plaintiff's behalf. (Tr. 186-193.) Mr. Vickers stated he has known plaintiff for 30 years, and sees her on nights and weekends. (Tr. 186-187.) He stated that plaintiff gets out of breath very easily, has breathing problems in her sleep, and requires help preparing meals, doing laundry, doing dishes, dusting, and cleaning the house. (Tr. 186-189.) Mr. Vickers also stated that plaintiff has difficulty lifting, bending, standing, walking, climbing stairs, and completing tasks, and that she can walk about half a block before needing to stop and rest. (Tr. 191.) With respect to plaintiff's cognitive functioning, Mr. Vickers wrote that Plaintiff can pay attention "about three quarters of the time," but she does not finish conversations, chores, reading, or movies. (*Id.*)

The ALJ found that Mr. Vicker's testimony was inconsistent with objective medical evidence in the record.[4] (Tr. 21.) Inconsistency with medical evidence is a germane reason sufficient to discredit lay witness testimony. *Bayliss*, 427 F.3d at 1218. Specifically, Mr. Vicker's testimony as to plaintiff's limitations were inconsistent with Dr. Hawn's opinion that plaintiff met either NYHA Class I or II, and thus experienced at most "slight limitation of physical activity." (Tr. 377.) The ALJ may reject lay testimony if he provides "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to the

---

[4] Citing *Bruce v. Comm'r*, Plaintiff argues that inconsistency with the objective medical evidence is not a legally sufficient reason for rejecting lay testimony. Pl. R. Br. 3 (citing 557 F.3d 1113, 1116 (9th Cir. 2009)). *Bruce*, however, stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a germane reason to reject lay testimony. *Bruce*, 557 F.3d at 1116.

Page 13 - FINDINGS AND RECOMMENDATION

ALJ's determination. *Lewis*, 236 F.3d at 512. The ALJ thus provided a germane reason for rejecting Mr. Vickers' testimony.[5]

*Recommendation*

For the reasons stated above, the Commissioner's decision should be AFFIRMED and this case DISMISSED.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 1st day of July 2013.

JOHN V. ACOSTA
United States Magistrate Judge

---

[5] Plaintiff argues at length that the ALJ erred in citing other reasons for rejecting Mr. Vickers' testimony; however, to the extent that the ALJ erred in citing these other reasons, any errors were harmless. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding an erroneous basis for an ALJ's determination is harmless error if other valid reasons supporting that determination remain).

Page 14 - FINDINGS AND RECOMMENDATION